IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **BENJAMIN CARTER,** <br> Plaintiff, <br><br> v. <br><br> **JOSEPH ELY, et al.,** <br> Defendants. | ) <br> )   Case No. 7:20-cv-00713 <br> ) <br> ) <br> )   By: Michael F. Urbanski <br> )   Chief United States District Judge <br> ) |

## **MEMORANDUM OPINION**

Plaintiff Benjamin Carter is a Virginia inmate who was previously incarcerated at Red Onion State Prison ("Red Onion") and Wallens Ridge State Prison ("Wallens Ridge"). He commenced this action by filing a pro se complaint under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at those facilities. While still proceeding pro se,[1] Carter filed an amended complaint asserting violations of his rights under the First, Eighth, and Fourteenth Amendments by various Virginia Department of Corrections ("VDOC") officials and employees. The case is presently before the court on motions to dismiss filed by Harold Clarke, Henry Ponton, and Wallens Ridge.[2] ECF Nos. 60 and 84. For the reasons set forth below, the motions to dismiss are **GRANTED**.

### I.     Factual Background

Carter's amended complaint sets forth the following allegations relevant to the motions to dismiss filed by Clarke, Ponton, and Wallens Ridge. For purposes of ruling on the motions,

---

[1] Carter has since retained counsel, who filed notices of appearance in February 2022.

[2] Defendants Joseph Ely, Christopher King, Jeff Kiser, James Lambert, Eric Miller, Officer Sisco, and Sergeant Messer have filed a motion for partial summary judgment, and Carter has moved for summary judgment on certain claims against Ely. Those motions will be addressed separately.

the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

On May 19, 2020, while incarcerated at Red Onion, Carter admittedly assaulted a correctional officer, Lieutenant Lambert, after Lambert called him a racial slur. Am. Compl., ECF No. 35, at ¶¶ 17, 23. Immediately after the assault, Carter was punched in the back of the head and restrained face-down on the floor. Id. ¶ 24. A group of correctional officers subsequently punched, kicked, and stomped on Carter for approximately ten minutes while he was fully restrained. Id. ¶ 25. Moments later, Carter was beaten and sexually assaulted by other officers. Id. ¶¶ 30–35.

That same day, Warden Jeff Kiser advised Carter that he "was being 'emergency transferred' because it was 'no longer safe' for [Carter to be held at Red Onion]." Id. ¶ 39. Carter was moved to Wallens Ridge later that evening. Id. ¶ 44. During transport, Carter was forced to wear an electric shock belt that transport officers intentionally triggered multiple times without justification. Id. ¶¶ 42–43. Once he arrived at Wallens Ridge, another officer stood on Carter's thigh and squeezed his left eyebrow until blood ran down his face. Id. ¶ 45.

Carter was assigned to Wallen Ridge's restrictive housing unit ("RHU"), where he remained for several months. Id. ¶¶ 59–60. On September 15, 2020, after Carter complained of due process violations associated with his "prolonged RHU status," Joseph Ely advised him that he was not going to ever leave the RHU because he had assaulted Ely's friend. Id. ¶ 61. Two days later, Ely recommended that Carter be "re-classified to Level S (Segregation)." Id. ¶

62. On October 13, Henry Ponton, the Chief of Operations for the VDOC's Western Region, approved the reclassification. Id. ¶¶ 11, 62; see also Am. Compl. Ex. K, ECF No. 35-1, at 20.³

On October 19, 2020, Carter filed a regular grievance alleging that he had been confined in the RHU for over 150 days as a form of retaliatory punishment and that he had been denied "Level 'S' privileges" without receiving due process. Am. Compl. Ex. B, ECF No. 35-1, at 5. Carter asked to be transferred to any facility where he could receive those privileges with the exception of Red Onion. Id. Carter noted that he was "subject to retaliation there by other 'aware' officers who correspond with Lt. Lambert personally." Id.

On November 4, 2020, Carter's grievance was "deemed founded" at the first level of review. Id. at 3. Although Carter's housing assignment was found to be appropriate, the responding official determined that Ely had violated procedure by serving as both the Institutional Classification Authority ("ICA") and the Administrative Reviewer. Id. Consequently, the responding official determined that another ICA hearing would need to be completed to correct the procedural error. Id. Carter alleges that he received another hearing on November 12, 2020. Am. Compl. ¶ 64.

On November 21, 2020, the Chief of Housing at Wallens Ridge advised Carter that he was being moved back to Red Onion. Id. ¶ 65. When Carter objected on the basis that he had been assaulted there, the officer advised him that he "should[ not have] filed a grievance." Id. Three days later, Carter was transferred to Red Onion. Id. ¶ 67. Carter alleges that numerous

---

³ Exhibit page citations refer to the pagination generated by the court's CM/ECF system.

items of personal property were not transferred with him and that Wallens Ridge is "legally responsible for the deprivation of [his] personal property." Id. ¶ 71.

## II. Procedural History

On April 2, 2021, Carter filed an amended complaint against multiple defendants, including Harold Clarke, the Director of the VDOC; Henry Ponton; and Wallens Ridge. Carter claims that Clarke was "aware of the unconstitutional practices against [him]" and "d[id] nothing" to protect his constitutional rights. Id. ¶ 69. Carter further alleges that Clarke acted with "reckless indifference to [his] safety" and "negligence." Id. As for the other moving defendants, Carter claims that Ponton "continually approved the retaliatory transfers within the Western Region" and that Wallens Ridge "deprived [him] of his personal property w/o due process and . . . in retaliation in violation[] of the Fourteenth and First Amendments." Id. ¶¶ 71, 73.

Clarke, Ponton, and Wallens Ridge have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). Carter has responded to the motions, and they are ripe for disposition.

## III. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, a pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

## IV. Discussion

Carter has filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017); see also Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

A.     Harold Clarke

Carter does not set forth any factual allegations suggesting that Clarke personally engaged in the alleged unconstitutional conduct of which he complains. Instead, Carter summarily alleges that Clarke was "aware of the unconstitutional practices" and did nothing to protect Carter's constitutional rights. Id. ¶ 69.

As a general rule, "mere knowledge of [a constitutional violation] does not suffice" to establish personal liability under § 1983. Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018). This is true even for supervisory or management officials. See Iqbal, 556 U.S. at 677 (rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"). In order to state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted); see also Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (discussing the "heavy burden" that a plaintiff assumes when asserting a claim of supervisory liability).

To satisfy the first element, a plaintiff must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the

subordinate poses an unreasonable risk of harm of constitutional injury." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (internal quotation marks omitted); see also Slakan, 737 F.2d at 373 (noting that a plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents"). With respect to the second element, "a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Id. (internal quotation marks omitted). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." Shaw, 13 F.3d at 799 (internal quotation marks and citations omitted).

Here, the amended complaint is devoid of factual allegations that would support these elements. Among other deficiencies, Carter does not plausibly allege that Clarke had actual or constructive knowledge that correctional officers were engaging in conduct that posed a pervasive risk of constitutional injury, or that Clarke continuously failed to act in the face of "documented widespread abuses." Wilkins, 751 F.3d at 226. Carter's conclusory assertions against Clarke do not state a cognizable claim of supervisory liability under § 1983. See Hoffman v. Office of the State Atty., 793 F. App'x 945, 954 (11th Cir. 2019) ("Because the plaintiffs' claims of supervisory liability are supported by conclusory allegations, the complaint does not contain sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation marks and citation omitted); Thompson v. Commonwealth, 878 F.3d 89, 111 (4th Cir. 2017) (affirming the dismissal of a supervisory liability claim on summary judgment where the plaintiff "only ma[de] conclusory allegations without any specific facts that [the supervisory]

defendants had knowledge that retaliation was taking place and that they acquiesced in the retaliatory acts").

To the extent Carter intended to assert state tort claims against Clarke, his conclusory assertions of recklessness and negligence are insufficient to state plausible claims for relief. See Twombly, 550 U.S. at 555 (explaining that mere "labels and conclusions" are insufficient to survive a motion to dismiss); see also Hernandez v. Brewer, 658 F. App'x 837, 840 (9th Cir. 2016) (holding that the district court properly concluded that a pro se plaintiff made only conclusory statements regarding negligence and gross negligence, and "therefore failed to satisfy the pleading standard" set forth in Twombly and Iqbal). Accordingly, the court will grant Clarke's motion to dismiss and dismiss the claims against him without prejudice.[4]

### B. Henry Ponton

Carter seeks to hold Ponton responsible for approving the decision to transfer him to Wallens Ridge and Red Onion. See Am. Compl. ¶ 70. Carter claims that the transfers were "retaliatory" and that they were implemented for no "penological reason." Id.

In moving to dismiss the claims against him, Ponton correctly points out that an inmate has no constitutional right to be housed in a particular prison or to remain in the prison to which he was initially assigned. See Olim v. Wakinekona, 461 U.S. 238, 245–48 (1983); Meachum v. Fano, 427 U.S. 215, 226–29 (1976). Thus, the mere approval of a transfer—without an intent to retaliate—does not give rise to a cognizable constitutional claim. See, e.g.,

---

[4] In his response to Clarke's motion, which was filed pro se, Carter appears to suggest that he could allege additional facts that would state a plausible claim against Clarke. Based on Carter's assertions, and given that he is now represented by counsel, the court will afford him the opportunity to seek leave to amend.

Yeadon v. Lappin, 423 F. App'x 627, 630 (7th Cir. 2011) (noting that "prison transfers alone are insufficient" to state a constitutional claim).

Although an inmate may state a claim under § 1983 if the decision to transfer him was made in retaliation for exercising his rights under the First Amendment,[5] Carter does not state a plausible claim of retaliation against Ponton. In particular, Carter does not allege facts sufficient to show that there was a causal connection between his grievances (or any other activity protected by the First Amendment)[6] and Ponton's decision to approve his transfer to Red Onion or Wallens Ridge.

Claims of retaliation by inmates are generally treated with skepticism "because 'every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Inmates "who claim their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [dismissal]." Adams, 40 F.3d at 74. In order to state a colorable retaliation claim under § 1983, an inmate must plausibly allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal relationship between the

---

[5] See, e.g., Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995) (explaining that prison officials cannot transfer an inmate to another correctional facility in order to punish him for exercising his First Amendment rights).

[6] It is well established that filing a grievance is a type of activity protected by the First Amendment. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 543-46 (4th Cir. 2017).

9

inmate's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

With respect to the causation element of a retaliation claim, a plaintiff "must allege a causal connection between [his] First Amendment activity and the alleged adverse action." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005). "In order to establish this causal connection, a plaintiff in a retaliation claim must show, at the very least, that the defendant was aware of [him] engaging in protected activity." Id. (citing Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1988)). "'Knowledge alone, however, does not establish a causal connection' between the protected activity and the adverse action." Id. (quoting Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)). "There must also be some degree of temporal proximity" or other facts sufficient to suggest a causal connection. Id.

Here, Carter alleges that he filed a grievance regarding his long-term confinement in the restrictive housing unit at Wallens Ridge and that a Wallens Ridge employee made a comment suggesting that he was being transferred back to Red Onion because of that grievance. However, Carter does not allege that Ponton was aware of his grievance or any other protected activity, or that the grievance played a role in Ponton's decision to approve the transfer request made by other prison officials. Consequently, Carter has not alleged facts from which the court could reasonably infer that Ponton personally engaged in retaliatory conduct in violation of the First Amendment.

In his response in opposition to Ponton's motion, Carter cites the test for supervisory liability under § 1983, suggesting that he seeks to hold Ponton liable in his supervisory capacity.

10

See Pl.'s Resp. Opp'n Mot. Dimiss, ECF No. 97, at 6. As was true with Clarke, however, Carter does not allege sufficient facts to state a claim of supervisory liability against Ponton. In particular, the amended complaint is devoid of allegations from which the court could reasonably infer that Ponton had actual or constructive knowledge that subordinate employees were engaged in conduct that posed "a pervasive and unreasonable risk of constitutional injury" to Carter, or that Ponton "was deliberately indifferent to or tacitly authorized widespread abuses" by subordinate employees. Wilkins, 751 F.3d at 227. Thus, the amended complaint does not state a viable claim of supervisory liability, and the claims against Ponton will be dismissed without prejudice.[7]

### C. Wallens Ridge

Finally, the court concludes that Carter has not stated a cognizable claim for relief against Wallens Ridge. To the extent Carter seeks to hold Wallens Ridge liable under § 1983, a state prison is not a "person" subject to liability under the statute. See Va. Office for Prot. & Advocacy v. Reinhard, 405 F.3d 185, 189 (4th Cir. 2005) (agreeing that a state agency "is not a 'person' within the meaning of [§ 1983]"); McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890, 893 (E.D. Va. 1992) (holding that correctional facilities in Virginia are properly considered "arms of the state" and "therefore not persons under § 1983").

Additionally, Carter's claims against Wallens Ridge are barred by the Eleventh Amendment. Under the Eleventh Amendment, "an unconsenting State is immune from suit brought in federal court by her own citizens as well as by citizens of another State." Edelman

---

[7] Ponton argues in his pro se response that he "has a right to offer more supporting evidence against defendant Ponton." Pl.'s Resp. Opp'n Mot. Dismiss at 12. If Carter believes that he can remedy the deficiencies identified by the court, he may seek leave to amend.

11

v. Jordan, 415 U.S. 651, 662–63 (1974). This protection also extends to state agencies and instrumentalities, Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997), including state prisons. See Hubbard v. Cal. Dep't of Corr. & Rehab., 585 F. App'x 403, 404 (9th Cir. 2014) (holding that the district court properly dismissed claims against state prisons "as barred by the Eleventh Amendment"). Therefore, absent waiver or abrogation of sovereign immunity, any claims against Wallens Ridge "are barred regardless of the relief sought." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

In this case, the immunity afforded by the Eleventh Amendment has not been waived by the Commonwealth of Virginia. Nor has it been abrogated with respect to the claims asserted against Wallens Ridge. "While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, it has long been settled that 42 U.S.C. § 1983 . . . does not effect such an abrogation." In re Sec'y of Dep't of Crime Control & Pub. Safety, 7 F.3d 1140, 1149 (4th Cir. 1993). Likewise, while the Virginia Tort Claims Act ("VTCA") generally "waive[s] sovereign immunity for tort claims filed in state courts," it "does not waive the state's eleventh amendment immunity" in federal courts. McConnell v. Adams, 829 F.2d 1319, 1329 (4th Cir. 1987). Moreover, the limited waiver of sovereign immunity provided by the VTCA only "applies to one type of litigation, tort actions against the Commonwealth." Battle v. Ledford, 912 F.3d 708, 713 (4th Cir. 2019) (quoting Ogunde v. Commonwealth, 628 S.E. 2d 370, 373 (Va. 2006)). It does not apply to tort actions against state agencies or instrumentalities. See Billups v. Carter, 604 S.E.2d 313, 318 (Va. 2004) (explaining that the VTCA "had the effect of creating a limited waiver of the sovereign immunity of the Commonwealth but not

of its agencies"). Consequently, any claims against Wallens Ridge are clearly barred by the Eleventh Amendment.

## V. Conclusion

For the reasons set forth herein, the motions to dismiss filed by Clarke, Ponton, and Wallens Ridge, ECF Nos. 60 and 84, are **GRANTED**. An appropriate order will be entered.

Entered: March 15, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.03.15 10:23:01
-04'00'

Michael F. Urbanski
Chief United States District Judge